## UNITED STATES DISTRICT COURT
## FOR THE  NORTHERN DISTRICT OF ILLINOIS

CHARLES KNOWLES,
*on behalf of himself,*

Case No.:

      Plaintiff,

**COMPLAINT**

          -against-

TRABERT AND HOEFFER, INC.

      Defendant.

Plaintiff, CARLTON KNOWLES (hereinafter "Plaintiff"), on behalf of himself, by and through his undersigned attorney, hereby files this Complaint against Defendant, TRABERT AND HOEFFER, INC. (hereinafter "Defendant"), and states as follows:

## <u>INTRODUCTION</u>

1.    This action seeks to put an end to systemic civil rights violations committed by Defendant against Plaintiff. Defendant is denying Plaintiff equal access to the goods and services Defendant provides to its non-disabled customers through https://www.Trabertandhoeffer.com (hereinafter the "Website"). The Website provides to the public a wide array of the goods, services, and other programs offered by Defendant. Yet, the Website contains access barriers that make it difficult, if not impossible, for blind customers like Plaintiff to use the Website. Defendant thus excludes the blind from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind people to fully and independently access a variety of services, including purchasing jewelry online.

2.      Plaintiff is a blind individual. He brings this civil rights action against Defendant for failing to design, construct, and/or own or operate a website that is fully accessible to, and independently usable by, blind people.

3.      Specifically, the Website has many access barriers preventing Plaintiff from independently purchasing jewelry when using assistive computer technology.

4.      Plaintiff uses the terms "blind person" or "blind people" and "the blind" to refer to all persons with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20/200. Some blind people who meet this definition have limited vision. Others have no vision.

5.      Approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.[1] There are approximately 250,000 visually impaired persons in the Northern District of Illinois .[2]

6.      Many blind and visually impaired people enjoy using the Internet just as sighted people do. The lack of an accessible website means that blind people are excluded from the rapidly expanding jewelry industry and from independently accessing the Website.

7.      Despite readily available accessible technology, such as the technology in use at other heavily trafficked websites, which makes use of alternative text, accessible forms, descriptive links, and resizable text, and limits the usage of tables and JavaScript, Defendant has chosen to rely on a predominantly visual interface. Defendant's sighted customers can independently browse, select, and purchase jewelry without the assistance of others. However,

---

[1] Americans with Disabilities: 2017 Report, U.S. Census Bureau Reports
[2] Erickson, W., Lee, C., von Schrader, S. (2017). Disability Statistics from the American Community Survey (ACS). Ithaca, NY: Cornell University Yang-Tan Institute (YTI). Retrieved from Cornell University Disability Statistics website: www.disabilitystatistics.org

blind people must rely on sighted companions to assist them in successfully purchasing jewelry on the Defendant's Website.

8.     By failing to make the Website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

9.     Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the Americans with Disabilities Act. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons.

10.     Plaintiff attempted to purchase jewelry on the Website. However, unless Defendant remedies the numerous access barriers on the Website, Plaintiff will continue to be unable to independently navigate, browse, and make a purchase on the Website.

11.     This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal and state law and to include monitoring of such measures, to update and remove accessibility barriers on the Website so that Plaintiff will be able to independently and privately use the Website. This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, ("ADA").

13.     Venue is proper in the Northern District of Illinois  pursuant to 28 U.S.C.

§§ 1391(b)-(c) and 1441(a). Defendant is subject to personal jurisdiction in the Northern District of Illinois, because Defendant has a primary business located in the Northern District of Illinois . Defendant also has been and is committing the acts alleged herein the Northern District of Illinois , has been and is violating the rights of consumers in the Northern District of Illinois , and has been and is causing injury to consumers in the Northern District of Illinois .

## PARTIES

14.     Plaintiff is and has been at all times material hereto a resident of Mecklenburg, County, North Carolina

15.     Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff cannot use a computer without the assistance of screen reader software. Plaintiff has been denied the full enjoyment of the facilities, goods and services of the Website, as a result of accessibility barriers on the Website. Most recently in July 2019, Plaintiff attempted to browse Defendant's Website to purchase jewelry, but could not do so due to the inaccessibility of the Website. The inaccessibility of the Website has deterred him from enjoying the goods and services of Defendant.

16.     Defendant is an American corporation organized under the laws of the Northern District of Illinois . Its principal executive office is located at111 E. Oak Street Chicago, IL 60611 and its registered agent is located at 223 S. Wacker Dr. Ste #8000, Chicago, IL 60606. .

17.     Defendant owns and operates a high-end jewelry store (hereinafter the "Store"), which is a place of public accommodation located in the Northern District of Illinois . The Store provides to the public luxury merchandise , such as diamonds necklaces, bracelets, earrings, rings,

pins, and cufflinks . Among other things, the Website offers an array of vintage diamonds. The inaccessibility of the Website has deterred Plaintiff from purchasing jewelry online.

18.     Plaintiff, on behalf of himself seeks full and equal access to the services provided by Defendant through the Website.

## **FACTUAL ALLEGATIONS**

19.     Defendant owns and operates the Store, a high-end jewelry store, located at 111 E. Oak Street, Chicago, IL 60611.

20.     The Website advertise a variety of services and benefits offered by Defendant throughout the United States, including the Northern District of Illinois . The Website is owned, controlled and/or operated by Defendant.

21.     Among the features offered by the Website are the following:

(a)     store information allowing anyone who wishes to shop  at the Store to learn its location, hours, and phone number; and

(b)     the ability to purchase a diamond bracelets, necklaces, rings, or earrings;

22.     This case arises out of Defendant's policy and practice of denying the blind access to the Website, including the goods and services offered by Defendant through the Website. Due to Defendant's failure and refusal to remove access barriers to the Website, blind individuals have been and are being denied equal access to the Store as well as to the numerous goods, services and benefits offered to the public through the Website.

23.     Defendant denies the blind access to goods, services and information made available through the Website by preventing them from freely navigating the Website.

24.     The Internet has become a significant source of information for conducting business and for doing everyday activities such as shopping, banking, etc., for sighted and blind persons.

25.     The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products, and services contained therein.

26.     There are well established guidelines for making websites accessible to blind people. These guidelines have been in place for at least several years and have been followed successfully by other large business entities in making their websites accessible. The Web Accessibility Initiative (WAI), a project of the World Wide Web Consortium which is the leading standards organization of the Web, has developed guidelines for website accessibility, including the Web Content Accessibility Guidelines (WCAG). The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including, but not limited to: ensuring that all functions can be performed using a keyboard and not just a mouse; adding alternative text to non-text content; and adding headings so that blind people can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader.

27.     The Website contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: the use of images , rather than text, to display essential content and the inability to access content via the keyboard.

28.     According to WCAG 2.1 Guideline 1.4.5, text should be used to convey information, rather than images. The images on the main page of the Website lack alternative text, thereby prohibiting Plaintiff to comprehend the content of the Website. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen reader can speak the alternative text while a sighted user sees the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. Since the images on the Website do not contain alt-text, visually impaired users such as Plaintiff are unaware of the Website photos, which are posted throughout the Website. Thus, the Website's inaccessible design denies Plaintiff and blind customers the ability to independently access the Website's images, which have been intentionally posted on the Website.

29.     The Website requires the use of a mouse to access essential content. The Website contains a significant amount of text content that is inaccessible via the keyboard, including the "Add To Bag" tab  on the "View Image" page . Yet, according to WCAG 2.1 Guideline 2.1.1, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and other blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, the Website's inaccessible design, which requires the use of a mouse to browse the menu, denies Plaintiff the ability to independently navigate the Website.

30.     The Website thus contains access barriers which deny full and equal access to Plaintiff, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of the  Store.

31.     Plaintiff has made numerous attempts to browse the location and menus on the Website, most recently in July 2019, but was unable to do so independently because of the many access barriers on the Website. These access barriers have caused the Website to be inaccessible to, and not independently usable by, blind and visually impaired individuals.

32.     As described above, Plaintiff has actual knowledge of the fact that the Website contains access barriers causing it to be inaccessible, and not independently usable by, blind and visually impaired individuals.

33.     These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of the Website and the Store .

34.     Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

      (a)     constructing and maintaining a website that is inaccessible to blind individuals with knowledge of the discrimination; and/or

      (b)     constructing and maintaining a website that is sufficiently intuitive and/or obvious that is inaccessible to blind individuals; and/or

      (c)     failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind individuals.

35.     Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

## **FIRST CAUSE OF ACTION**

(Violation of 42 U.S.C. §§ 12181, *et seq.* — Title III of the Americans with Disabilities Act)
(on behalf of Plaintiff)

36.     Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

37.    Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a), provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

38.    The Store is a sales establishment and public accommodation within the definition of 42 U.S.C. § 12181(7)(B). The Website is a service, privilege, or advantage of Defendant. The Website is a service that is by and integrated with the Store. Independent of the Store , the Website is also a public accommodation.

39.    Defendant is subject to Title III of the ADA because it owns and operates the Website.

40.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I) it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

41.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

42.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods,

services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

43.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

44.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their websites accessible, including but not limited to: ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

45.     The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* and the regulations promulgated thereunder. Patrons of Defendant who are blind have been denied full and equal access to the Website, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

46.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

47.     As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website and the Store in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* and/or its implementing regulations.

48.     Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

49.     The actions of Defendant were and are in violation of the ADA and therefore Plaintiff invokes his statutory right to injunctive relief to remedy the discrimination.

50.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

51.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION

(Declaratory Relief)
(on behalf of Plaintiff)

52.     Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

53.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the goods, services and facilities of the Website and by extension the Store , which Defendant owns, operates, and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.,* and N.Y.C. Administrative Code § 8-107, *et seq.* prohibiting discrimination against the blind.

54.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests relief as follows:

55.     A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*;

56.     A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

57.     A declaration that Defendant owns, maintains, and/or operates the Website in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*;

58.     Plaintiff's reasonable attorneys' fees, statutory damages, expenses, and costs of suit as provided by state and federal law;

59.     For pre- and post-judgment interest to the extent permitted by law; and

60.     Such other and further relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

DATED: July 25, 2019

LEE LITIGATION GROUP, PLLC

By: */s/ C.K. Lee*_____
     C.K. Lee, Esq.
     148 West 24th Street, 8th Floor
     New York, NY 10011
     Tel.: 212-465-1188
     Fax: 212-465-1181